**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER, INC.** | **CIVIL ACTION** |
| **VERSUS** | **No. 13-6769** |
| **WILLIAM DOPP ET AL.** | **SECTION I** |

<u>**ORDER AND REASONS**</u>

Before the Court is a motion[1] filed by plaintiff to dismiss defendants' counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants filed an opposition,[2] plaintiff filed a reply,[3] and defendants filed a sur-reply.[4] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

The Greater New Orleans Fair Housing Action Center ("GNOFHAC") is a "non-profit fair housing advocacy organization [whose] mission is to eradicate housing discrimination and segregation throughout the greater New Orleans area [by] engag[ing] in education, investigation, and enforcement activities with respect to fair housing laws."[5] GNOFHAC conducted an investigation of a rental property offered by defendants and concluded, based on its "testing," that unlawful discrimination was occurring.[6] GNOFHAC alleges, and defendants admit, that GNOFHAC filed a complaint with the U.S. Department of Housing and Urban Development ("HUD"), which referred the matter to the Louisiana Department of Justice ("LADOJ"), and that

---

[1] R. Doc. No. 6.
[2] R. Doc. No. 8.
[3] R. Doc. No. 14.
[4] R. Doc. No. 19.
[5] R. Doc. No. 1, ¶ 5.
[6] R. Doc. No. 1, ¶¶ 7-10, 26.

"[o]n January 25, 2012, the LADOJ issued a report determining that there was reasonable cause to find that Defendants had engaged in discriminatory housing practices based on race."[7] GNOFHAC subsequently filed the complaint in the above-captioned matter, alleging violations of the Fair Housing Act, 42 U.S.C. § 3604(a)-(b), for discriminatory refusal to rent based on race and for discrimination in the terms and conditions of a rental based on race.[8]

Defendants responded by filing an answer and counterclaim.[9] Defendants generally deny most of GNOFHAC's allegations, and they assert that "[w]hen GNOFHAC first accused defendants of discrimination, . . . [d]efendants provided detailed, logical, and reasonable explanations for all of the factual circumstances which [GNOFHAC] claimed were evidence of discrimination, but [GNOFHAC] refused to give any reasonable consideration to the information."[10] Defendants allege, "Until the filing of this suit, GNOFHAC refused to provide defendants with significant details of their investigation which would allow the defendants to respond to the details of the allegations."[11]

Defendants assert that "GNOFHAC originally demanded at mediation a sum which defendant[s] [were] clearly unable to pay and[,] despite actual knowledge of the emotional toll this took on both of the defendants, persisted in their unreasonable demands."[12] "GNOFHAC was advised repeatedly of Mr. Dopp's emotional instability, of the fact that he had threatened suicide over these unfounded allegations, that Mr. Dopp was unemployed, and that Mrs. Dopp

---

[7] R. Doc. No. 1, ¶¶ 23-24; R. Doc. No. 4, at 4.
[8] R. Doc. No. 1, ¶¶ 29-31.
[9] R. Doc. No. 4.
[10] R. Doc. No. 4, at 5.
[11] R. Doc. No. 4, at 6.
[12] R. Doc. No. 4, at 6.

was raising three children on a low hourly wage part-time job. Further, GNOFHAC was advised of the strain that these unfounded allegations were having upon defendant[s'] marriage."[13]

According to defendants' counterclaim, GNOFHAC hired several lawyers who continued to make demands and gather information from defendants regarding their ability to pay any pre-litigation settlement.[14] Defendants allege that throughout the period leading up to this litigation, "GNOFHAC has focused not on the facts of the case, but on an attempt to extort funds from the defendants which they knew the Dopps did not have."[15] Defendants conclude, "GNOFHAC's steadfast insistence on extortion of a sum of money from defendants under all of the facts and circumstances, and their negligent or intentional failure to properly investigate the original claim and the exculpatory information provided[,] constitutes an actionable tort entitling plaintiffs-in-counter-claim to recovery of an appropriate sum to compensate them for their extreme emotional distress."[16]

GNOFHAC filed the instant motion to dismiss pursuant to Rule 12(b)(6), and it argues that defendants have failed to state a claim under any theory of recovery.[17] GNOFHAC also seeks an award of costs and attorneys' fees incurred in bringing the motion.[18] Defendants argue that their "counterclaim sets forth more than enough detail to support claims for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress" and that "[i]n the event that this Court finds that more facts are required, defendants should be allowed to amend the counterclaim before it is dismissed."[19]

---

[13] R. Doc. No. 4, at 6.
[14] R. Doc. No. 4, at 6-7.
[15] R. Doc. No. 4, at 7.
[16] R. Doc. No. 4, at 8.
[17] *See* R. Doc. No. 6-1, at 7.
[18] R. Doc. No. 6-1, at 23.
[19] R. Doc. No. 8, at 4.

## STANDARD OF LAW

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the U.S. Court of Appeals for the Fifth Circuit explained in *Gonzalez v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

**DISCUSSION**

**I.      Intentional Infliction of Emotional Distress**

Under Louisiana law, an intentional infliction of emotional distress claim requires that 1) the conduct of the defendant be "extreme and outrageous," 2) the plaintiff suffer severe emotional distress, and 3) the defendant desire to inflict the emotional distress or know that severe emotional distress would be substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). "Louisiana courts have staunchly adhered to the standard established in *White.*" *LaBove v. Raftery*, 802 So. 2d 566, 578 (La. 2001).

In order to be "extreme and outrageous," the conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *White*, 585 So. 2d at 1209. "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Id.* at 1209-10 (citing Restatement (Second) of Torts, § 46 cmt. d). "The defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered." *Id.* at 1210.

The Louisiana Second Circuit Court of Appeal, citing *Nicholas v. Allstate Insurance Co.*, 765 So. 2d 1017 (La. 2000), recently elaborated on the applicable standard for the first element:

> It is not enough that the defendant acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community

> would arouse his resentment against the actor and leave him to exclaim,
> "Outrageous."

*Fletcher v. Wendelta, Inc.*, 999 So. 2d 1223, 1230 (La. App. 2 Cir. 2009).

"[P]roving outrageous conduct by the defendant" is a "heavy burden" for plaintiffs to meet. *Succession of Harvey v. Dietzen*, 716 So. 2d 911, 917 (La. App. 4 Cir. 1998). "Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *White*, 585 So. 2d at 1209.

GNOFHAC primarily argues that defendants' counterclaim fails to allege facts that support the first element. According to GNOFHAC, "[t]he filing of an administrative complaint, proceeding in the administrative process, and making attempts at settlement before filing a lawsuit, is not 'extreme' or 'outrageous' activity, particularly as the Dopps' Counterclaim does not allege bad faith, ill intent, or malice."[20] GNOFHAC cites *DirecTV, Inc. v. Atwood*, No. 03-1457, 2003 WL 22765354 (E.D. La. Nov. 19, 2003) (Engelhardt, J.), for the proposition that "the act of filing suit 'is embraced in this and most civilized communities' and therefore 'regardless of plaintiff's alleged motive—whether it be tortious, malicious, or even criminal—the alleged conduct itself simply does not rise to the level of extreme and outrageous.'"[21]

Defendants respond that "GNOFHAC's conduct has been extreme and outrageous" and that "the counterclaim alleges that GNOFHAC desired to inflict severe emotional distress through its pattern of harassment."[22] Defendants allege that "GNOFHAC has withheld all evidence of wrongdoing and instead has simply demanded money" and that "[i]t ignored all evidence that pointed to the fact that the Dopps had done nothing wrong and instead zeroed in on the assertions of its 'testers' for the purpose of obtaining money," all of which it did with

---

[20] R. Doc. No. 6-1, at 15.
[21] R. Doc. No. 6-1, at 15 (quoting *DirecTV*, 2003 WL 22765354, at *2).
[22] R. Doc. No. 8, at 5.

knowledge "of the effects its actions were having on defendants."[23] Finally, defendants distinguish *DirecTV* on the basis that "the '[a]lleged conduct at issue [in that case was] the filing of the suit,'" whereas defendants complain only of GNOFHAC's pre-lawsuit activity.[24]

The counterclaim alleges that GNOFHAC "refused to give any reasonable consideration" to plaintiff's allegedly exculpatory information during its investigation,[25] that GNOFHAC did not provide "significant details of their investigation" to defendants before filing suit,[26] that GNOFHAC made settlement demands that defendants were "clearly unable to pay and despite actual knowledge of the emotional toll this took on both of the defendants,"[27] and that such "failure to properly investigate" imposes liability on GNOFHAC.[28]

Defendants have not cited any authority to support their assertion that such conduct is extreme and outrageous. Some of the pre-litigation conduct alleged in the counterclaim commonly occurs in connection with lawsuits filed before this or any other court. GNOFHAC's actions of making settlement demands to avoid litigation,[29] hiring different attorneys to pursue its interests,[30] and requesting that financial information be turned over voluntarily[31] cannot be "regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So. 2d at 1209.

In *Ulmer v. Frisard*, 694 So. 2d 1046 (La. App. 5 Cir. 1997), the Louisiana Fifth Circuit Court of Appeal found that pre-litigation activities which included conduct somewhat similar to that

---

[23] R. Doc. No. 8, at 5. Defendants do not cite to the counterclaim or its specific allegations in this section of their opposition.
[24] R. Doc. No. 8, at 5 (quoting *DirecTV*, 2003 WL 22765354, at *2).
[25] R. Doc. No. 4, at 5.
[26] R. Doc. No. 4, at 6.
[27] R. Doc. No. 4, at 6.
[28] R. Doc. No. 4, at 8.
[29] R. Doc. No. 4, at 6-7.
[30] R. Doc. No. 4, at 6-7.
[31] R. Doc. No. 4, at 7-8.

alleged in this case, did not give rise to liability for intentional infliction of emotional distress. The court considered an intentional infliction of emotional distress counterclaim filed by *pro se* defendants against the plaintiffs and the plaintiffs' attorney. *Id.* at 1047, 1049. The defendants alleged that the attorney "stated, 'I'm going to clean your clock' when [defendants] refused to sign her proposed settlement;" that she "telephoned [defendants] to make threats of continued litigation and financial ruin;" that defendants were threatened to be driven into bankruptcy; and that one defendant "was unable to sleep for 72 hours after that threat" and "sustained a nervous breakdown" following these threats and the receipt of "a demand letter . . . and notice of the subsequent filings of two lawsuits on behalf of the [plaintiffs]." *Id.* at 1049. The court stated, "Upon review of the allegations contained in the [counterclaim], we find no behavior which was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." *Id.* The court found, "While the alleged actions of the attorney in this matter show the acrimonious nature of the litigation between the parties, it is not actionable." *Id.*

Additionally, defendants' description of GNOFHAC's activities as "extortion"[32] is not supportable. The counterclaim does not allege any facts to indicate that this a case where there was any "abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *White*, 585 So. 2d at 1209-10 (citing Restatement (Second) of Torts, § 46 cmt. d). Although GNOFHAC's alleged "knowledge that [defendants are] particularly susceptible to emotional distress is a factor to be considered," *id.* at 1210, the mere fact that GNOFHAC's pre-litigation strategy may have had a substantial negative impact on defendants does not make such activities tortious.

---

[32] R. Doc. No. 4, at 7.

Finally, the Court finds that *DirecTV* is instructive. Defendants are correct that the complained-of conduct in *DirecTV* was filing the lawsuit, 2003 WL 22765354, at *2, whereas "[i]n the instant case, the conduct occurred prior to suit and thus this case is factually distinct from *DirecTV*."[33] Despite this factual distinction, however, the Court finds that the pre-litigation activity complained of in this case is similar to that complained of in *DirecTV*. Just like the filing of a civil action, GNOFHAC's attempt to resolve its claim without litigation "is an action that is embraced in this and most civilized communities. Thus, regardless of [GNOFHAC]'s alleged motive . . . the alleged conduct itself simply does not rise to the level of extreme and outrageous." *Id.*

The Court finds that the counterclaim fails to set forth sufficient factual allegations in support of defendants' claim that that GNOFHAC's conduct was extreme and outrageous. *See Twombly*, 550 U.S. at 555. Accordingly, defendants' counterclaim fails to state a claim for intentional infliction of emotional distress.[34]

## II.    Negligent Infliction of Emotional Distress

"Louisiana law does not *generally* recognize an independent cause of action for negligent infliction of emotional distress. . . . The cause of action is available under limited circumstances only." *DirecTV*, 2003 WL 22765354, at *3 (emphasis added) (internal quotation marks omitted). Recovery for negligent infliction of emotional distress, when available, is pursuant to Louisiana Civil Code Article 2315, which provides: "Every act of man whatever that causes damage to

---

[33] R. Doc. No. 8, at 5. It should be noted that defendants state in their sur-reply that "[t]he tort[i]ous persecution of the defendants in this matter did not end over a year ago, in fact, it reached its zenith only upon the filing of the lawsuit itself." R. Doc. No. 19, at 2.

[34] Because the Court finds that this element is not present in the counterclaim, the Court need not address GNOFHAC's alternative arguments that defendants' counterclaim does not allege facts to support the other two elements of the tort, R. Doc. No. 6-1, at 15, that GNOFHAC's actions are protected by the First Amendment, R. Doc. No. 6-1, at 19-22, or that defendants' counterclaims have prescribed, R. Doc. No. 14, at 9-10.

another obliges him by whose fault it happened to repair it." *See Powell v. Brookshire's Grocery Co.*, 705 So. 2d 286, 291 (La. App. 2 Cir. 1997). In order for liability to attach under an Article 2315 duty-risk analysis, the plaintiff must prove:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was the legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element).

*Powell*, 705 So. 2d at 292 (citing *Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318, 322 (La. 1994)); *Barrino v. E. Baton Rouge Sch. Bd.*, 697 So. 2d 27, 33-34 (La. App. 1 Cir. 1997)); *see also DirecTV*, 2003 WL 22765354, at \*3. Furthermore, recovery for negligent infliction of emotional distress is only available in extraordinary circumstances and recovery is limited to cases "involving especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious." *Moresi v. State ex. rel. Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1096 (La. 1990).

GNOFHAC argues that defendants' counterclaim for negligent infliction of emotional distress must be dismissed because, as discussed above, GNOFHAC's conduct was not "outrageous."[35] Defendants respond that "[t]he allegations in the Counterclaim set forth the extraordinary circumstances required under Louisiana law in order to state a claim."[36] Both parties discuss *Metoyer v. Am. Eagle Airlines, Inc.*, 806 F. Supp. 2d 911 (W.D. La. 2011), which only briefly addresses claims of negligent infliction of emotional distress and which is materially distinguishable because it arose in the employer-employee context. *Id.* at 922-23.

---

[35] R. Doc. No. 6-1, at 16-17.
[36] R. Doc. No. 8, at 5.

10

Defendants have not offered any authority to support its assertion that a claim for negligent infliction of emotional distress is viable under these circumstances. As discussed above, GNOFHAC's alleged actions include some pre-litigation conduct which occurs in connection with other lawsuits filed before this or any other court, and the counterclaim does not allege any "special circumstances" that would permit an independent cause of action for negligent infliction of emotional distress. *See Moresi*, 567 So. 2d at 1096.

Furthermore, GNOFHAC's acts were not so "outrageous" as to be actionable under Louisiana law "or related to another tort." *Id.*; *see also McClinton v. Sam's E., Inc.*, No. 11-2156, 2012 WL 4483492, at *10 (W.D. La. Sept. 28, 2012) (Foote, J.) ("[B]ecause [plaintiff]'s action are not sufficiently extreme and outrageous to state a claim of intentional infliction of emotional distress, *a fortiori* they do no[t] fall into the category of 'having an especial likelihood of genuine and serious mental distress' as required by *Moresi* . . . ."); *Lester v. Sec'y of Veterans Affairs*, 514 F. Supp. 2d 866, 881 (W.D. La. 2007) ("[A] plaintiff may recover for unintentional or negligent infliction of emotional distress unaccompanied by physical injury where the defendant's negligent conduct is deemed to be outrageous.").

Accordingly, GNOFHAC's actions do not fall within the "limited circumstances" that give rise to a claim for negligent infliction of emotional distress. *See DirecTV*, 2003 WL 22765354, at *3.

### III.   Negligence

Defendants rely on *Moresi* for the proposition that they can maintain an independent cause of action for "negligence" apart from the above-described claims for intentional and negligent infliction of emotional distress.[37] However, as GNOFHAC correctly notes, defendants

---

[37] R. Doc. No. 8, at 7.

have not claimed any economic or physical injury.[38] The counterclaim alleges that defendants are seeking "an appropriate sum to compensate them for their extreme emotional distress . . . includ[ing], without limitation, the mental and emotional distress placed on each of the Dopps, and both of them, the emotional strain caused by Mr. Dopp's contemplation of suicide, and the destruction of their marriage."[39]

*Moresi* and the opinions that follow it clearly outline the requirements that defendants must meet in order to only recover emotional damages under the circumstances alleged in the counterclaim. As discussed above, defendants have failed to state a viable claim pursuant to those requirements. Defendants cannot avoid this result by restyling their claim as one for "negligence" as opposed to "negligent infliction of emotional distress." Accordingly, defendants' counterclaim fails to state a claim upon which relief can be granted.

## IV.    Attorneys' Fees

GNOFHAC has also sought an award of costs and attorneys' fees in connection with this motion.[40] GNOFHAC has not identified any legal or factual basis for such an award. Accordingly, the Court exercises its discretion not to grant GNOFHAC's request for costs and attorneys' fees.

## V.    Leave to Amend

Defendants have requested leave to amend their counterclaim "[i]n the event that the Court determines that the Counterclaim does not contain sufficient facts to state the above causes of action."[41] "Leave to amend is not automatic . . . [']but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely

---

[38] R. Doc. No. 6-1, at 18.
[39] R. Doc. No. 4, at 8.
[40] R. Doc. No. 6-1, at 23; R. Doc. No. 14, at 10.
[41] R. Doc. No. 8, at 8.

abuse of that discretion and inconsistent with the spirit of the Federal Rules.'" *Advocate Fin., LLC v. Schmidt*, No. 09-2872, 2010 WL 2867906, at *1 (E.D. La. July 19, 2010) (Lemelle, J.) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court is unaware of any additional factual allegations which would allow defendants' pursuit of their counterclaim. However, if defendants believe such an amendment may overcome the defects in their counterclaim as described in this order and reasons, they may file an amended counterclaim in accordance with the deadline set forth in the scheduling order.[42]

### CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion is **GRANTED IN PART**. Defendants' counterclaim is **DIMISSED WITHOUT PREJUDICE** to defendants' right to file an amended counterclaim no later than **Friday, April 25, 2014**.

**IT IS FURTHER ORDERED** that the motion is **DENIED** to the extent that it seeks an award of GNOFHAC's costs and attorneys' fees.

New Orleans, Louisiana, April 22, 2014.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[42] R. Doc. No. 7, at 2. The Court notes that defendants have been on notice of the alleged deficiencies in their counterclaim since the motion to dismiss was filed on March 24, 2014.